**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DISTRICT**

| | |
|---|---|
| CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation; LDS FAMILY SERVICES, a Utah corporation, <br><br> Plaintiffs, <br><br> v. <br><br> BN, an individual, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER STAYING CASE AND DENYING MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS** <br><br> Case No. 2:19-cv-00062 <br><br> Judge Clark Waddoups |

Before the court are two motions—Plaintiff Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and Plaintiff LDS Family Services' (Plaintiffs) Motion for Preliminary Injunction, (ECF No. 7) and Defendant BN's Motion to Dismiss, (ECF No. 17). As explained below, the court stays the case because Plaintiffs have not exhausted Tribal remedies. The court therefore DENIES Plaintiffs' Motion for Preliminary Injunction and DENIES Defendant's Motion to Dismiss.

<u>Background</u>

<u>After BN Files Suit in Navajo District Court, Plaintiffs File Action in Federal Court and Judge Shelby Dismisses for Failure to Exhaust Tribal Remedies</u>

"In May 2016, BN filed a complaint in the Navajo Nation District Court, District of Window Rock, Arizona . . . alleging that Plaintiffs are liable for injuries she claims to have suffered decades ago while living in Utah during her participation in a program called the Indian Student Placement Program . . . ." (Compl. ¶ 1, ECF No. 2 at 2.) "After being served with BN's complaint, Plaintiffs filed an action in this Court requesting that BN be enjoined from proceeding with her claims in the Navajo District Court because that court lacked subject-matter jurisdiction." (Compl. ¶ 2, ECF No. 2 at 2.) That case was assigned to United States District

Judge Robert J. Shelby, and was given case number 2:16-cv-453.[1] The court refers to this case as "the 2016 Case."

According to the Plaintiffs, "[t]he Navajo Nation intervened in" the 2016 Case "and represented that Plaintiffs could exhaust their tribal remedies by seeking review of the Navajo District Court's jurisdictional determination by filing a writ of prohibition with the Navajo Supreme Court." (ECF No. 7 at 13 n. 4.) On November 16, 2016, Judge Shelby entered an order dismissing the 2016 Case—concluding that "Plaintiffs must exhaust their Tribal Court remedies before seeking relief from this court." (2:16-cv-453, ECF No. 40 at 2.)

Jurisdictional Discovery in Tribal Court and Plaintiffs' Motion to Dismiss BN's Tribal Suit for Lack of Subject Matter Jurisdiction

On April 5, 2017, the Navajo District Court entered a Stipulated Protective Order, ordering "that discovery in [that] case . . . be limited to facts relevant to the issue of jurisdiction of the Court for the next 120 days," and ordering that "[a]fter 120 days, the parties [could] proceed with discovery in accordance with Navajo Rules of Civil Procedure . . . ." (ECF No. 23-1 at 3–4.)

On October 23, 2017, Plaintiffs "filed a motion in the Navajo District Court to dismiss BN's complaint for lack of subject-matter jurisdiction . . . ." (ECF No. 7 at 6; ECF No. 2-2 at 2.) Plaintiffs "challenge[d] jurisdiction both facially and factually." (ECF No. 29-6 at 10; *see also* ECF No. 29-3 at 4 ("Petitioners' Motion asserts that Petitioners are making both facial and factual challenges to the Complaint.").[2])

---

[1] Judge Shelby is now the Chief District Judge of the District of Utah.

[2] Plaintiffs challenged B.N.'s "allegation that placement decisions were made on the Navajo Nation . . . ." (ECF No. 29-6 at 10; *see also* ECF No. 29-3 at 4 ("the only fact challenged by presenting contradictory evidence . . . is the location student placement decisions were made.").)

On November 17, 2017, Plaintiffs submitted the affidavit of Roger Van Komen, who provided, under oath, that "[d]ecisions regarding the placement of Navajo Nation members who chose to participate in the" Indian Student Placement Program "were not made on the Navajo Nation." (ECF No. 29-1 at 57.)

According to Defendant, on January 11, 2018, BN's counsel "took the deposition of Harold Call [Brown], who was Commissioner of LDS Family Services from 1976–1981 and 1985–1996.[3]" (ECF No. 29-4 at 7; *see also* ECF No. 29-4 at 30.)

BN "responded to [Plaintiffs' Motion to Dismiss] on February 16, 2018 and a Reply was filed on March 2, 2018." (ECF No. 29-1 at 33.)

On May 25, 2018, the District Court of the Navajo Nation, Judicial District of Window Rock, Arizona entered an order denying Plaintiffs' Motion. (*See* ECF No. 2-2 at 5; ECF No. 29-1 at 36.) The District Court of the Navajo Nation stated that the Plaintiffs' "primary argument" was that the Navajo Court "lack[ed] jurisdiction over them because they are not members of the Navajo Nation and the allegations of sexual abuse giving rise to the . . . case occurred in the state of Utah or outside the Navajo Nation." (ECF No. 29-1 at 33.) The District Court of the Navajo Nation found "jurisdiction based on the Treaty of 1868, Navajo Nation laws, and application of the Montana Test." (ECF No. 2-2 at 3.) The tribal district "court's order [did] not analyze" Plaintiffs' "factual challenge, nor make an explicit finding regarding the location placement decisions were made." (ECF No. 29-3 at 7.)

---

[3] Defendant relies on Mr. Brown's testimony to dispute "Plaintiffs['] claim [that] they did not perform any placement decision activities within the Navajo Nation" and Plaintiffs' claim "that no actionable conduct occurred within the territorial boundaries of the tribe." (ECF No. 17 at 19.)

<u>State Settlement Agreement</u>

According to Plaintiffs, "[o]n August 1, 2018, Plaintiffs communicated" to Defendant BN's former counsel "an offer to settle Defendant's claim . . . ." (ECF No. 4-1 at 4.) According to Plaintiffs, the next day, on August 2, 2018, one of Defendant's former attorneys sent an email "stating that Defendant had accepted Plaintiffs' settlement offer." (ECF No. 4-1 at 4.) According to Plaintiffs, on August 3, 2018, Defendant's former counsel—who had sent the email stating that Defendant had agreed to settle—received a letter from a different attorney indicating that Defendant was not interested in settling and indicating that Defendant had retained this new firm as substitute counsel. (ECF No. 4-1 at 5.) Defendant's former counsel forwarded this letter to Plaintiffs' counsel. (ECF No. 4-1 at 5.) On August 17, 2018, Plaintiffs' counsel sent a letter to BN's new attorney asking whether BN "intend[ed] to honor the terms of the settlement already reached." (ECF No. 4-1 at 20.) On August 22, 2018, BN's new attorney responded, stating that BN's "prior counsel spoke with her husband, and her husband attempted to settle on her behalf. Her prior counsel never spoke with [her] and [she] never agreed to settle." (ECF No. 4-1 at 23.) The new attorney concluded this letter by stating that they were "confident that Navajo courts will respect the fact that [BN] has not agreed to compromise her claim." (ECF No. 4-1 at 25.)

<u>Plaintiffs Seek Writ of Prohibition</u>

On September 25, 2018, Plaintiffs "sought a writ of prohibition from the Navajo Nation Supreme Court . . . prohibiting the Navajo District Court from exercising jurisdiction." (ECF No. 7 at 6–7; *see also* ECF No. 2-3 at 3.) In this writ, Plaintiffs provided that the parties had conducted some jurisdictional discovery. (*See* ECF No. 29-1 at 11 ("After some initial jurisdictional discovery, [BN] responded to the motion to dismiss.").) Plaintiffs also argued that

"[p]lacement decisions were not made on the Navajo Nation." (ECF No. 29-1 at 12 (citing Declaration of Roger Van Komen[4]).)

Plaintiffs File State Suit

"On October 17, 2018, Plaintiffs filed suit against Defendant" in the Fourth Judicial District in and for Utah County, State of Utah seeking "an order finding that the settlement agreement entered into by Plaintiffs and Defendant on August 2, 2018, is valid and binding . . . ." (ECF No. 4-1 at 6.) After confirming that Defendant did not intend to respond to the Complaint, Plaintiffs move for a default certificate and later motion for default judgment. (*See* ECF No. 4-1.)

Navajo Supreme Court Issues Alternative Writ and Navajo District Court Responds

On October 22, 2018, the Navajo Nation Supreme Court issued an Alternative Writ ordering "[t]he Respondent District [Tribal] Court, through its staff attorney," to "file a response to" Plaintiffs' petition. (ECF No. 29-2 at 3.)

The Window Rock District Court filed its response on November 13, 2018. In its response, the District Court noted that Plaintiffs' "Motion asserts that [they] are making both facial and factual challenges" to B.N.'s Complaint. (*See* ECF No. 29-3 at 4.) The District Court also provided:

> The district court's order does not analyze this factual challenge, nor make an explicit finding regarding [where] the location placement decisions were made. The district court may have determined that this particular fact was not a 'necessary fact for jurisdiction' as the location of the decision about where Navajo students would be placed is only one fact among many bearing on this issue.

(ECF No. 29-3 at 7.) Ultimately, the District Court argued that "[a] writ of prohibition cannot be issued because it is not clear that the Window Rock District Court lacks jurisdiction. To the contrary, as described in greater detail below, it is likely that the district court has jurisdiction,

---

[4] At the time of his declaration, November 12, 2017, Mr. Van Komen was the "manager at LDS Family Services . . . ."

*although it may have failed to articulate the sufficient findings* in its 'Order Denying Defendants'

Motion to Dismiss—Jurisdiction' . . . ." (ECF No. 29-3 at 3 (emphasis added).)

<u>Parties Complete Briefing on Plaintiffs' Writ</u>

On November 13, 2018, BN's counsel filed a brief opposing Plaintiffs writ. (*See* ECF

No. 29-4 at 27.)  In this brief, BN's counsel provided, in part, that Plaintiffs' "claim [that] they

did not perform any placement decision activities within the Navajo Nation and that no

actionable conduct occurred within the territorial boundaries" was contradicted by "Harold

Brown," who served as the Commissioner for the LDS Family Services. (*See* ECF No. 29-4 at

26.)

On November 26, 2018, Plaintiffs filed a reply in support of their petition for a writ of

prohibition. (*See* ECF No. 29-6 at 29.) In this reply, Plaintiffs addressed the dispute regarding the

location of placement decisions:

> As the District Court notes, Petitioners challenge jurisdiction both facially and
> factually . . .  Specifically, Petitioners challenge the allegation that placement
> decisions were made on the Navajo Nation by providing a declaration from Roger
> Van Komen demonstrating that decisions regarding the placement of participating
> tribal members from the part of the Navajo Nation where BN lived were made by
> LDS Social Services employees operating from their offices in Cedar City and
> Salt Lake City, Utah . . . Respondents fail to submit any evidence challenging Mr.
> Van Komen's declaration. Thus, this Court may find that placement decisions
> were not made on the Navajo Nation.

(ECF No. 29-6 at 10 n. 5).

<u>Navajo Supreme Court Issues Opinion on Writ</u>

On December 28, 2018, the Navajo Nation Supreme Court issued an opinion on

Plaintiffs' writ. (*See* ECF No. 2-3.) In this opinion the Navajo Nation Supreme Court noted that

Judge Shelby had "declined to issue" Plaintiffs' injunction in the 2016 case "citing among other

things, the failure of the [Plaintiffs] to exhaust tribal remedies . . . ." (ECF No. 2-3 at 3.) The

Navajo Nation Supreme Court also provided that "[t]he threshold issue is whether there is evidence that the [Navajo Nation] district court clearly lacks jurisdiction sufficient to warrant the issuance of a permanent writ of prohibition." (ECF No. 2-3 at 4.) The Supreme Court continued: [w]hen involving jurisdiction, a writ of prohibition will issue when the lower court clearly has no jurisdiction . . . ." (ECF No. 2-3 at 4 (citing *Kang v. Chinle Family Court*, No. SC-CV-37-18, slip op. at 4 (Nav. Sup. Ct. September 21, 2018).) The Navajo Supreme Court further provided that "[j]urisdiction is a fact specific inquiry." (ECF No. 2-3 at 5 (citing *Manygoats v. Cameron Trading Post*, 8 Nav. R. 3. ((Nav. Sup. Ct. 2000).) The Court continued, "the District Court must make factual findings and legal conclusions on subject matter jurisdiction." (ECF No. 2-3 at 5 (citing *Clark v. Allen*, 7 Nav. R. 422 (Nav. Supr. Ct. 1999).)

The Navajo Nation Supreme Court concluded that "there are not sufficient facts to determine that the [Navajo Nation] District Court clearly lacks the jurisdiction to hear and decide the case." (ECF No. 2-3 at 5.) The Supreme Court further provided:

> [T]his Court finds that the Petitioners have failed to meet the burden to have the writ made permanent. Currently the parties have not conducted discovery. The Petitioners have yet to file an answer. At this point, this Court lacks the facts necessary to make a dispositive assessment and must permit the trial court to proceed on the allegations in the complaint. To issue the writ prior to discovery, without facts is to surrender sovereignty of the Navajo Nation.

(ECF No. 2-3 at 6.)

The Navajo Supreme Court's Opinion did not include any discussion of Plaintiffs' factual challenge to the location of placement decisions. Nor did the Navajo Supreme Court's Opinion address the fact that the Navajo District Court's order did not "analyze this factual challenge, nor make an explicit finding regarding [where] the location placement decisions were made." (ECF No. 29-3 at 7.)  Nor did the Navajo Supreme Court's opinion mention that jurisdictional

discovery had occurred. Nor did the opinion specifically address the deposition of Harold

Brown. Nor did the opinion mention Roger Van Komen's declaration.

<u>State Court Enters Order Granting Motion for Default Judgment</u>

On January 2, 2019, a state judge sitting in the Fourth Judicial District in and for Utah

County, State of Utah entered an Order granting Plaintiffs' Motion for Default Judgment. (*See*

ECF No. 4-2 at 3.) That Order provided, in relevant part:

1. On August 2, 2018, Plaintiffs and Defendant entered into a valid and binding

   settlement agreement with respect to the claims alleged by Defendant in her

   complaint filed in the Navajo Nation district court dated May 27, 2016.

2. Pursuant to the settlement agreement, Defendant is entitled to a payment of

   $60,000.00 from Plaintiffs. Upon tender of that sum, Plaintiffs are released

   from all claims that are or could have been asserted against Plaintiffs in that

   case.

(ECF No. 4-2 at 3.)

<u>Action Before this Court</u>

On January 28, 2019, Plaintiffs filed their Complaint in this court, arguing that "[u]pon

denial of the Writ [of prohibition,]" they "exhausted their tribal court remedies." (Compl. ¶ 35,

ECF No. 2 at 11 (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987) and *Big Horn Cty.*

*Elec. Coop., Inc. v. Big Man*, No. CV 17-65-BLG-SPW, 2018 WL 4603276, at *1 (D. Mont.

Sept. 25, 2018)).) Plaintiffs "seek judgment from this Court declaring that the Navajo District

Court lacks subject-matter jurisdiction over BN's claims and that BN's claims are moot."

(Compl. ¶ 8, ECF No. 2 at 4.)

According to Plaintiffs, "there are two independent grounds for [their] requested relief." (Compl. ¶ 8, ECF No. 2 at 4.) First, they argue that "[t]he Navajo District Court lacks subject matter jurisdiction over BN's claims because Plaintiffs are nonmembers of the Navajo Tribe and BN's claims did not arise from conduct on the Navajo Nation." (Compl. ¶ 8, ECF No. 2 at 4.) Second, they argue that "BN's claims pending in the Navajo District Court are moot because they have been settled and released." (Compl. ¶ 8, ECF No. 2 at 4.) Plaintiffs argue that the court has federal question jurisdiction over their first request and supplemental jurisdiction over the second request.[5]

On January 29, 2019, Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 7.) In this Motion, Plaintiffs "seek to enjoin BN from" "proceeding with her claims in the Navajo District Court" "because the Navajo District Court lacks subject-matter jurisdiction over her claims . . . ." (ECF No. 7 at 7.) In their Motion, Plaintiffs argued that they "exhausted their tribal court remedies" upon the Navajo Supreme Court's "denial of the writ." (ECF No. 7 at 12.) Here, Plaintiffs cited three cases in support of their argument that they had exhausted tribal remedies. First, they cited *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169–70 (10th Cir. 1992) for the proposition that it recognized "tribal remedies related to a trial court's jurisdiction are deemed exhausted when the tribal appellate court is provided with the opportunity to review the jurisdictional question and renders a decision regarding the question." (ECF No. 7 at 13 n. 4.) Plaintiffs also cited *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140,

---

[5] (*See* Compl. ¶ 12, ECF No. 2 at 5 ("This court has federal question jurisdiction . . . over Plaintiffs' claim requesting a judgment declaring that the Navajo District Court lacks subject-matter jurisdiction over BN's claims against Plaintiffs."); (*see* Compl. ¶ 13, ECF No. 2 at 5 ("[t]his Court has supplemental jurisdiction . . . over Plaintiffs' claim requesting a judgment declaring that BN's claims against Plaintiffs pending in the Navajo District Court are moot because BN settled and released those claims.").

1149–50 (10th Cir. 2011) and *Enlow v. Moore*, 134 F.3d 993, 995–96 (10th Cir. 1998) for the same proposition. (*See* ECF No. 7 at 13 at n. 4.)

Defendant did not file a response to Plaintiffs' Motion for Preliminary Injunction. But on March 1, 2019, Defendant filed a Motion to Dismiss. (ECF No. 17.) In this Motion to Dismiss, Defendant made several arguments. Among these, Defendant argued that "[c]ontrary to the assertions of the Plaintiffs, they have not exhausted tribal remedies, and this case should be dismissed until the tribal court has had a full opportunity to develop the record." (ECF No. 17 at 21.)

On April 5, 2019, Plaintiffs filed an Opposition to Defendant's Motion to Dismiss. (ECF No. 23.) As they did in their Motion for Preliminary Injunction, Plaintiffs argued that they have exhausted their Tribal Remedies. (ECF No. 23 at 26.) Plaintiffs argued that the Navajo Supreme Court's denial of their Writ of Prohibition "satisfied the exhaustion requirement: it provided the Navajo courts the chance to 'determine its own jurisdiction' over BN's claims, to explain the basis on which it asserted jurisdiction, and to 'rectify any errors' made in making that determination." (ECF No. 23 at 29 (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16–17 (1987)). Plaintiffs also argued that "[t]he Navajo Supreme Court's decision" "incorrectly stated, 'Currently, the parties have not conducted discovery.'" (ECF No. 23 at 27 n. 11.) Plaintiffs argued that "[b]oth parties have conducted discovery related to the jurisdictional dispute." (ECF No. 23 at 27.)

On April 18, 2019, Defendant filed a Reply to Plaintiffs' Opposition. (ECF No. 24.) In this Reply, Defendant argued that "[t]he fact that the parties had engaged in some discovery prior to Plaintiffs filing their motion to dismiss does not mean the Navajo Supreme Court deemed it was sufficient to constitute a 'full record.'" (ECF No. 24 at 11 (citation omitted).) Defendant

argued that because the "Navajo Supreme Court" has not "decided the jurisdiction issue," tribal exhaustion has not occurred. (*See* ECF No. 24 at 10.)

On May 1, 2019, the court entered an Order Requiring Supplemental Materials. (ECF No. 25 at 1.) The court required Plaintiffs to provide materials submitted to the Navajo Supreme Court in connection with the Writ of Prohibition. (ECF No. 25 at 9.) The court also required the parties to provide supplemental briefing addressing:

a. Are tribes "territories or possessions" of the United States within the meaning of 28 U.S.C. § 1738 such that the full faith and credit statute applies to tribes.

b. If the full faith and credit statute applies to the Navajo tribal court, does that conclusion require the tribal court to give preclusive effect to the state court judgment against the Defendant in this case.

c. If the defendant is found as a matter of law to have released all of her claims against the Plaintiff,

i. is the tribal court without jurisdiction because of a lack of a case or controversy, or by principles of mootness, *or*

ii. is this an issue of preclusion, and therefore an affirmative defense to be raised in the first instance in the tribal court.

d. In light of these considerations, does this court have jurisdiction to enjoin the tribal court from proceeding.

(ECF No. 25 at 9–10.)

On June 7, 2019, Plaintiffs filed a supplemental brief in response to the court's order. Plaintiffs took the position that because Indian tribes are not "territories" or "possessions" under the full faith and credit statute, Indian tribes are not required to extend full faith and credit to

state court judgments. (*See* ECF No. 35 at 7.) As they did previously, the Plaintiffs also argued that the Navajo District Court "lacks subject-matter jurisdiction to adjudicate BN's claims . . . because her claims did not arise from actionable conduct on the Navajo Nation." (ECF No.35 at 7.) Plaintiffs further argued that, as a result of the settlement agreement, "the Navajo District Court is without jurisdiction because BN's claims are moot." (*See* ECF No. 35 at 17.) Plaintiffs also argued that this court has the authority to enjoin BN from proceeding in the Navajo District Court. (ECF No. 35 at 9.)

BN's counsel failed to provide any supplemental briefing. The court heard oral argument on the parties' motions on July 26, 2019.

<u>Analysis</u>

As explained above, Plaintiffs argue that "there are two independent grounds on which" the court "may enjoin BN from proceeding." (ECF No. 35 at 21.) First, Plaintiffs argue that BN "has no right to proceed in tribal court" because "the Navajo District Court lacks subject-matter jurisdiction over BN's claims under *Montana v. United States*, 450 U.S. 544 (1981) . . . ." (*See* ECF No. 35 at 22.) Second, they argue that BN "has no right to proceed in any jurisdiction" because "BN's claims are moot for lack of a 'case or controversy' . . . ." (ECF No. 35 at 21–22.) The court addresses both arguments in turn.

I. <u>Plaintiffs Have Not Exhausted Their Tribal Remedies</u>

Plaintiffs assert that "[t]his Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331." (Compl. ¶ 12, ECF No. 2 at 5.) "The question whether an Indian tribe retains power to compel a non-Indian . . . to submit to the civil jurisdiction of a tribal court is . . . a 'federal question' under § 1331." *See National Farmers Union Ins. Co. v. Crow Tribe,* 471 U.S. 845, 852 (1985). But "considerations of comity direct that tribal remedies be exhausted before the

question is addressed by" a federal district court. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15, 107 S. Ct. 971, 976, 94 L. Ed. 2d 10 (1987); *see also Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169–70 (10th Cir. 1992) ("The law is thus quite clear: For reasons of comity, federal courts should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted."). Indeed, "[t]he federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.'" *Id*. (quoting *National Farmers*, 471 U.S. at 857).

Regarding Plaintiffs' first argument, the question for this court is whether the Navajo Nation Supreme Court has been given a "full opportunity to determine its own jurisdiction." As explained below, the court holds that it has not, and for that reason, Plaintiffs have not yet exhausted their tribal court remedies.

In *Iowa Mutual*, the Supreme Court considered whether "a federal court" may exercise jurisdiction "before the tribal court system ha[d] been given an opportunity to determine its own jurisdiction." *Iowa Mut.*, 480 U.S. at 11. In that case, a tribal district court "addressed the issue of subject-matter jurisdiction" and "concluded that it would have jurisdiction over the suit." *Id*. at 12. Although the tribal code "established a Court of Appeals," it did not "allow interlocutory appeals from jurisdictional rulings," meaning "appellate review of the Tribal Court's jurisdiction c[ould] occur only after a decision on the merits." *Id*. The Supreme Court held that "[u]ntil appellate review is complete," the tribal court did not have "a full opportunity to evaluate the claim and federal courts should not intervene." *Id*. at 17. The Supreme Court further provided that if the tribal appellate court were to "uphold[] the lower court's determination that the tribal

courts have jurisdiction, petitioner may challenge that ruling in the [federal] District Court." *Id.*
at 19.

In reaching its holding in *Iowa Mutual*, the Supreme Court relied on *National Farmers*, a
decision it had reached just two years prior. In *National Farmers* the Supreme Court provided
that the "policy of supporting tribal self-government and self-determination" "favors a rule that
will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the
**factual** and legal bases for the challenge." *National Farmers*, 471 U.S. at 856 (bold added). In
other words, "the orderly administration of justice in the federal court will be served by allowing
a full record to be developed in the Tribal Court before either the merits or any question
concerning appropriate relief is addressed." *Id.*

As noted above, in the Motion for Preliminary Injunction, Plaintiffs relied on three Tenth
Circuit decisions to support their argument that they had exhausted their remedies. Their reliance
on these cases is misplaced.

First, Plaintiffs cite *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166,
1169–70 (10th Cir. 1992) for the proposition that that case recognized that "tribal remedies
related to a tribal court's jurisdiction are deemed exhausted when the tribal appellate court is
provided with the opportunity to review the jurisdictional question and renders a decision
regarding the question." (ECF No. 7 at 13 n. 4.) In Bank of Oklahoma, the Tenth Circuit
provided:

> [t]he Supreme Court has defined exhaustion of tribal court remedies to include
> appellate review within the tribal court system. The law is thus quite clear: For
> reasons of comity, federal courts should abstain from hearing cases that challenge
> tribal court jurisdiction until tribal court remedies, including tribal appellate
> review, are exhausted.

*Bank of Oklahoma*, 972 F.2d at 1169–70. But nowhere in *Bank of Oklahoma* did the Tenth Circuit make any statement that supports the proposition that exhaustion occurs when "the tribal appellate court is provided with the opportunity to review the jurisdictional question and renders [any] decision regarding the question." *See Bank of Oklahoma* 972 F.2d at 1169–70. Plaintiffs carefully crafted explanatory parenthetical finds no support in the text of *Bank of Oklahoma*.

Next, Plaintiffs cite *Enlow v. Moore*, 134 F.3d 993, 995–97 (10th Cir. 1998). *Enlow* involved a boundary dispute between a non-Indian and members "of the Muscogee (Creek) Nation." *Enlow*, 134 F. 3d at 994. "In the tribal court," the non-Indian "filed a motion to dismiss the complaint arguing that the tribal court lacked jurisdiction over the action," and the tribal district court "denied the motion." *Id*. The non-Indian "then filed an interlocutory appeal to the Supreme Court of the Muscogee (Creek) Nation, which affirmed the tribal court's decision." *Id*. at 994–95. The Supreme Court of the Muscogee (Creek) Nation "*held* that the tribal court **had jurisdiction** over the boundary dispute." *Id*. at 996 (bold added). "Specifically, the [tribal supreme] court held that the 'property in question is located within the boundaries of the Muscogee (Creek) Nation and that the property is Indian Country and that the [tribal] District Court does have jurisdiction over the parties.'" *Id*. at 996.

"The federal district court concluded that" the non-Indian's "tribal court remedies regarding subject matter jurisdiction had not yet been exhausted because the tribal court had yet to develop a factual record regarding the location of the disputed boundary line." *Id*. at 995. The Tenth Circuit held that the federal district court erred because "[t]he tribal supreme court unequivocally held that the disputed property was Indian land." *See id*. at 996. "[T]he location of the disputed boundary line . . . [went] to the jurisdictional issue." *Id*. at 996. The Tenth Circuit could not "ignore the clear language of the tribal supreme court's opinion" that "the disputed

land is within Indian country . . . ." *Id*. at 996. It was for this reason that "the district court had no reason to refrain from reviewing the tribal court's jurisdiction." *Id*. at 996.

Again, Plaintiffs reliance on *Enlow* is misplaced. Unlike in *Enlow*, the Navajo Nation Supreme Court never "*held* that the tribal court had jurisdiction over the . . . dispute." *C.f. Enlow*, 134 F.3d at 996 (emphasis in original). Instead, the Navajo Nation Supreme Court concluded that it "lack[ed] the facts necessary to make a dispositive assessment" on the jurisdictional issue. (ECF No. 2-3 at 6.) This is in stark contrast to *Enlow*, where the tribal supreme court's "unequivocal[]" holding resolved the critical factual issue necessary to determine the tribal court's jurisdiction.

Next, the Plaintiffs rely on *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1149–50 (10th Cir. 2011). (ECF No. 7 at 13.) *Crowe* is discussed in a district court decision, *Big Horn Cty. Elec. Coop., Inc. v. Big Man*, No. CV 17-65-BLG-SPW, 2018 WL 4603276, at *1 (D. Mont. Sept. 25, 2018), that Plaintiffs cite in their Complaint. (*See* Compl. ¶ 35, ECF No. 2 at 11.) "In *Crowe*, the plaintiff argued it exhausted its tribal remedies when the tribal appellate court reviewed a portion of the case but did not expressly review whether the tribal court had jurisdiction." *Big Horn Cty.*, 2018 WL 4603276 at *2. "The Tenth Circuit contrasted the case with *Enlow v. Moore*, where it held the plaintiff did exhaust its tribal remedies because the tribal appellate court had explicitly stated the tribal court had jurisdiction over the case even though the merits remained undecided." *Id*. The Tenth Circuit in *Crowe* noted that "*Enlow* does not address whether the tribal exhaustion rule may be satisfied where . . . the tribal court had an opportunity to pass on its jurisdiction but failed expressly to do so." *Crowe*, 640 F.3d at 1150. Importantly here, the Tenth Circuit in *Crowe* did not "address that issue . . . ." *Id*.

Again, Plaintiffs reliance on *Crowe* is misplaced. Nothing in *Crowe* stands for the

proposition that tribal exhaustion occurs where "the trial appellate court is provided with the opportunity to review the jurisdictional question and renders a decision regarding that question." (ECF No. 7 at 13 n. 4.)

Plaintiffs'' reliance on *Big Horn* is similarly misplaced. In *Big Horn* "the tribal court dismissed [a] complaint for lack of subject matter jurisdiction." *Big Horn Cty.*, 2018 WL 4603276 at *2. "The tribal appellate court reversed the tribal court, stating "[t]his Court rules that the Crow trial court **has subject matter jurisdiction** over this matter . . . ." *Id.* (bold added). The federal district court held that the tribal exhaustion rule had been satisfied because "the tribal appellate court took the opportunity to rule on the jurisdictional question and expressly held the tribal court had jurisdiction." *Id.* Again, this is in contrast to the Navajo Nation Supreme Court's decision, which found that it "lack[ed] the facts necessary to make a dispositive assessment" on the court's jurisdiction. (ECF No. 2-3 at 6.)

To summarize, none of the cases that Plaintiffs rely on support the proposition that tribal exhaustion occurs where a tribal court has an opportunity to pass on its jurisdiction but fails expressly to do so. In this court's view, a tribal court having an opportunity to pass on its jurisdiction—but failing to do so—is not sufficient to satisfy tribal exhaustion. More is required.

"At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the [full] opportunity to review the determinations of the lower tribal courts." *See Iowa Mutual*, 480 U.S. at 17. A "full opportunity" includes completion of appellate review. *See id.* Completion of appellate review includes an "opportunity to evaluate the factual and legal bases for the challenge" to the tribal court's jurisdiction. *See National Farmers*, 471 U.S. at 856. As explained below, the Navajo Supreme Court has not had a full opportunity to evaluate the factual

basis for the Plaintiffs' challenge to the tribal court's jurisdiction because the Navajo District Court failed to make crucial jurisdictional factual findings in the first instance.

In response to the Writ of Prohibition, the Navajo District Court candidly admitted that its order denying Plaintiffs' 12(b)(1) Motion did "not analyze" Plaintiffs' factual challenge regarding "the location student placement decisions were made," "nor make an explicit finding regarding the location placement decisions were made." (ECF No. 29-3 at 7.) The Navajo District Court recommended that the Navajo Supreme Court "either deny" Plaintiffs' Writ of Prohibition "if it determines the district court's findings are sufficient, or, in the alternative . . . deny the Petition and remand the matter for the district court to enter more specific findings of fact . . . ." (ECF No. 29-3 at 4–5.) The Navajo Supreme Court instead denied Plaintiffs' Motion on the basis that they "failed to meet the burden to have the writ made permanent," based, in large part on its belief that it "lack[ed] the facts necessary to make a dispositive assessment and must permit the trial court to proceed . . . ." (ECF No. 2-3 at 6.) The Navajo Supreme Court also provided that "the parties have not conducted discovery." (ECF No. 2-3 at 6.)

It is unclear to this court why the Navajo Supreme Court did not include any discussion of Plaintiffs' factual challenge to the location of placement decisions. Nor is it clear why the Navajo Supreme Court's Opinion failed to address the fact that the Tribal District Court's order did not "analyze this factual challenge, nor make an explicit finding regarding [where] the location placement decisions were made." (ECF No. 29-3 at 7.) Nor is it clear why the Navajo Supreme Court's opinion failed to mention that jurisdictional discovery had occurred. Regardless, based on this court's review of Navajo law, this court cannot conclude that the Navajo Supreme Court was afforded a full opportunity to evaluate the factual basis for the Plaintiffs' challenge to the tribal court's jurisdiction.

The parties dispute whether the Plaintiffs made any placement decisions within the Navajo Nation. (*See* ECF No. 17 at 19 ("Plaintiffs claim they did not perform any placement decision activities within the Navajo Nation and that no actionable conduct occurred within the territorial boundaries of the tribe. Yet, Harold Brown, represented, under oath, to the contrary.").) The location of Plaintiffs' placement decisions is likely relevant to the question of whether the tribal court has jurisdiction. But because "the district court did not make factual findings" *Clark v. Allen ex rel. Allen*, 7 Nav. R. 422, 476 (Nav. Sup. Ct. 1999) resolving this dispute, the Navajo Supreme Court did not have a full opportunity to determine its own jurisdiction. It appears that under Navajo law, factual findings relating to jurisdictional disputes must be made by the district court in the first instance. *See id*. at 476–77.

"As *National Farmers Union* indicates, proper respect for tribal legal institutions requires that they be given a 'full opportunity' to consider the issues before them and 'to rectify any errors.'" *Iowa Mut.*, 480 U.S. at 16. Before this court can weigh in on whether the tribal court has subject matter jurisdiction, it must first allow the Navajo Supreme Court an opportunity to review a full factual record. This court holds, based on the facts of this case, that the Navajo Supreme Court's consideration of Plaintiffs' Writ of Prohibition did not afford it a full opportunity to determine its own jurisdiction. This court interprets the Navajo Supreme Court's ruling on Plaintiffs' Writ of Prohibition to be more similar to a remand to the district court for further factual findings than an express holding that the tribal court has jurisdiction. Because the Navajo District Court must make further factual findings, the Navajo Supreme Court has not had a full opportunity to review the factual basis for Plaintiffs' challenge to the tribal court's jurisdiction. Plaintiffs have not exhausted their tribal remedies.

II. <u>The State Default Judgment Order Does Not Involve Issues of Mootness</u>

As discussed above, the court asked the parties to brief whether, assuming BN released her claims, "the tribal court is without jurisdiction . . . by principles of mootness" or whether that "is an issue of preclusion, and therefore an affirmative defense to be raised in the first instance in the tribal court." (ECF No. 25 at 9.) A court "has no subject matter jurisdiction over claims that are moot." *Browne v. City of Grand Junction, Colorado*, 85 F. Supp. 3d 1249, 1255 (D. Colo. 2015) (citing *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir.2010)).

In their response, Plaintiffs argued that "the doctrine of mootness . . . governs whether BN may proceed with her claims in the Navajo District Court," and argued that "the Navajo District Court is *without jurisdiction* because BN's claims are moot." (ECF No. 35 at 17–18 (emphasis added).) Plaintiffs also argued that "if . . . BN's claims are moot for lack of a 'case or controversy,' she has no right to proceed in any jurisdiction." (ECF No. 35 at 22.) In support of their argument, the Plaintiffs relied primarily on *Tosco Corp. v. Hodel*, which provides: "[w]ith limited exceptions, a settlement involving all parties and all claims moots an action." 804 F.2d 590, 592 (10th Cir. 1986). But *Tosco* did not involve a situation where a judgment was presented for enforcement in a court other than the one that rendered the judgment—as is the situation here. In *Tosco* the parties "entered into a settlement agreement" "while [their] appeals were pending" before the Tenth Circuit. *See Tosco*, 804 F.2d at 591. After reaching the settlement agreement, non-parties moved to intervene. *See id.* After "review[ing] the settlement agreement with care," the Tenth Circuit concluded that it constituted "a final settlement of the dispute," and therefore mooted the case, depriving the Tenth Circuit of jurisdiction.

Here, Plaintiffs obtained a state court judgment releasing them from all claims BN could have made in tribal court. Unlike in *Tosco*, this case involves cross boundary enforcement of a judgment. Plaintiffs move this court to enforce the state judgment by enjoining BN from proceeding in tribal court. Plaintiffs argue that "[t]he Fourth District Court's ruling has preclusive effect in this Court" by virtue of the full faith and credit statute, 28 U.S.C. § 1738. (*See* ECF No. 23 at 30 (citing *Reeder v. Johnson*, 723 F. Supp. 1428, 1431 (D. Utah 1989) for the proposition that "the preclusive effect of a state court judgment in a subsequent federal lawsuit is governed by the full faith and credit statute, 28 U.S.C. § 1738 . . . .").) But "[f]ull faith and credit comprises the law of issue and claim preclusion and '*is not a jurisdictional matter.*'" *Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010) (emphasis added); *see also Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 708 n. 4. (10th Cir. 2004) ("unlike *Rooker-Feldman*," full faith and credit is not a doctrine that "goes to 'jurisdiction,'" rather, it is a "preclusion doctrine[]" that "provide[s] [an] affirmative defense[] once a court exercises jurisdiction over a civil action, and [it is] subject to waiver where not timely raised.").

Plaintiffs argue that "BN's arguments in her motion to dismiss that attempt to rehash whether she settled her claims do not require Plaintiffs to raise a res judicata defense because this Court gives full faith and credit to [the] Fourth District Court's ruling that BN settled her claims." (ECF No. 35 at 20.) The issue is not whether Plaintiffs are required to raise an affirmative defense in this case related to the state court judgment. The issue is whether the tribal court should be allowed to determine for itself what effect to give the state court judgment. Because the state court judgment relates to an issue of preclusion—and not a lack of subject

matter jurisdiction by virtue of mootness—this court concludes that relief related to the state court judgment must be made either in the state court or in the tribal court.[6]

The court has good reason to believe that this conclusion comports with Congress's "strong interest in promoting tribal sovereignty, including the development of tribal courts." *Smith v. Moffett*, 947 F.2d 442, 444 (10th Cir. 1991). As the Supreme Court has recognized, "[t]ribal courts play a vital role in tribal self-government . . . and the Federal Government has consistently encouraged their development." *Iowa Mutual*, 480 U.S. at 14–15. As discussed above, Plaintiffs concede that the Navajo District Court is not required to give full faith and credit to the Fourth District Court's judgment. If this court were to grant Plaintiffs the relief they seek—and enjoin BN from proceeding in tribal court—the tribal court would be deprived of an opportunity to determine for itself what effect to give the state court judgment. This outcome would conflict with "the Federal Government's longstanding policy of encouraging tribal self-government." *Iowa Mutual*, 480 U.S. at 14.[7] The court declines to enjoin BN from proceeding in the Navajo District Court.

---

[6] Even if Plaintiffs are correct that the Navajo District court is without subject matter jurisdiction because the state court default judgment moots BN's claims, this court could not grant Plaintiffs the relief they seek because their argument constitutes a new challenge to the tribal court's subject matter jurisdiction—which requires them to exhaust their tribal remedies before making that challenge in this court. Based on the record before this court, Plaintiffs have not yet argued to the tribal court that the state court default judgment divests the tribal court of jurisdiction. The "federal policy supporting tribal self-government" requires this "federal court to stay its hand in order to give the tribal court a "full opportunity to determine its own jurisdiction." *Iowa Mutual*, 480 U.S. at 16. Plaintiffs must first make their new challenge to the tribal court's jurisdiction in the Navajo District court before seeking relief from this court.

[7] The court has another reason to decline Plaintiffs' request to enjoin BN. Even assuming the full faith and credit statute applied to the Navajo District Court, this court has serious reason to doubt whether the tribal court would be required to enforce the state court judgment releasing BN's claims. Plaintiffs seek to enforce a judgment proscribing future behavior—that is, behavior after the entry of the state judgment. They seek to prohibit BN from proceeding in tribal court. The Supreme Court does not appear to have squarely addressed whether a second court is required, under full faith and credit, to enforce another state court's judgment preventing a party from bringing suit in an action before the second court. But the Supreme Court has provided more generally that "[o]rders commanding action or inaction have been denied enforcement in a sister State when they . . . interfere[] with litigation over which the ordering State had no authority." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235 (1998). And the prevailing view appears to be that "the Full Faith and Credit Clause does not require enforcement of sister-state judgments that proscribe future behavior." *The Muddy Boundaries Between Res Judicata and Full Faith and Credit*,

<u>Conclusion</u>

As discussed above, the court holds that Plaintiffs have not exhausted their tribal remedies. "When a court finds, as here, that tribal exhaustion is required, the court can stay or dismiss the action . . . ." *Jaramillo v. Harrah's Entm't, Inc.*, No. 09CV2559 JM (POR), 2010 WL 653733, at *2 (S.D. Cal. Feb. 16, 2010). The undersigned has become familiar with much of the tribal proceedings that have already occurred. In the interest of judicial economy, the court stays rather than dismisses the case. Because the court stays the case, the court DENIES Defendant's Motion to Dismiss, (ECF No. 17). The court also DENIES Plaintiffs' Motion for Preliminary Injunction, (ECF No. 7).

Dated 23rd day of October, 2019.

BY THE COURT:

_____

Clark Waddoups
United States District Judge

---

58 Wash. & Lee L. Rev. 47, 50 (2001); *see id.* at 95 ("Sometimes, however, the party who obtains the injunction seeks to enforce it in another state, where the enjoined party has violated the injunction by bringing suit. In those cases the full faith and credit issue arises: Must the court of the second state enforce the first state's injunction? The Supreme Court has never addressed the issue. State courts typically take one of two approaches: Either they refuse to enforce the antisuit injunction, concluding that full faith and credit imposes no obligation to enforce, or they enforce the antisuit injunction on grounds of comity. Although courts might mention full faith and credit in enforcing the antisuit injunction, they do not enforce them because of any constitutional compulsion.").)